# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JERRY W. SHEETS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:04CV00071 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

In this social security case, I will remand the case to the Commissioner for further consideration.

## *I. Background.*

Jerry W. Sheets filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial

evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Sheets protectively filed an application for benefits on February 13, 2003, alleging disability as of that day. He received a hearing before an administrative law judge ("ALJ") on February 20, 2004. By decision dated April 2, 2004, the ALJ found that the plaintiff was not disabled within the meaning of the Act because he retained the residual functional capacity ("RFC") to perform a significant range of light work. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

## II. Facts.

Sheets was fifty years old at the time of the ALJ's decision. (R. at 14.) He has an eighth grade education and has worked as a drill operator and a hauler operator. (*Id.*) Sheets claims disability as a result of coal worker's pneumoconiosis, also known as "black lung" disease, nerves, depression, and arthritis. (*Id.*)

-2-

In determining whether Sheets is eligible for benefits, the ALJ reviewed medical records from Souhail Shamiyeh, M.D.; Joseph Smiddy, M.D.; Edward Petson, M.D.; Robert Spangler, Ph.D.; Lonesome Pine Hospital; Cardiac Diagnostics; and St. Mary's Family Center. In addition, the ALJ considered the claimant's school records, a list of his medications, and a Residual Functional Capacity Assessment and Psychological Review Technique Form completed by state agency physicians.

Based upon the evidence, the ALJ determined that the plaintiff suffers from severe respiratory and mental impairments and is unable to perform any of his past relevant work. The ALJ further determined that the plaintiff retains the RFC to perform a significant range of light work as defined in the regulations. Based upon the testimony of a vocational expert ("VE"), the ALJ found that there existed a significant number of jobs in the national economy which the plaintiff could perform.

### III. Analysis.

Sheets contends that the ALJ's decision is not supported by substantial evidence. He argues that the ALJ "underestimated his physical and non-exertional impairments," and he requests a remand for further consideration of the evidence. (Pl.'s Br. at 3.) Specifically, he argues that the ALJ erred by: (1) failing to discuss exertional impairments in addition to Sheets' pneumoconiosis, (2) discounting

-3-

Case 1:04-cv-00071-JPJ-PMS   Document 13   Filed 08/03/05   Page 3 of 11   Pageid#: 65

testimony from various treating and examining sources, and (3) not finding Sheets' non-exertional impairments to be more limiting. For the following reasons, I find Sheets' first two arguments unpersuasive, but remand the case for further consideration of his third contention.

*A.*

Sheets' first and second arguments are related and will be discussed together. First, Sheets argues that the ALJ erred by failing to discuss Sheets' exertional impairments of chest pains, fast heartbeat, orthopedic problems, and low back pain. Evidence of these conditions is found in Dr. Shamiyeh's medical records, (Pl.'s Br. at 4 (citing R. at 254-57)), making Sheets' first argument closely related to his second—that the ALJ improperly discounted testimony from Dr. Shamiyeh and other treating and examining sources.

The ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *see Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion. *See* 20 C.F.R. § 404.1527(d) (2005). The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining doctors, which constitute

-4-

a major part of the proof in disability cases. *See McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983).

Generally, an expert's opinion is given more weight the more the medical source presents relevant evidence to support it and the better the source explains the opinion. *See* 20 C.F.R. § 404.1527(d)(3). In addition, the more consistent the opinion is with the record as a whole, the more weight it will be given. *See* 20 C.F.R. § 404.1527(d)(4). Medical findings must also be supported by "medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 404.1526(b) (2005).

Contrary to Sheets' contention, the ALJ did not fail to discuss his chest pains, fast heartbeat, orthopedic problems, and low back pain. The ALJ specifically considered Sheets' own testimony and records from Dr. Shamiyeh, but ultimately determined that Sheets does not suffer from such impairments. (*See* R. at 16.) The ALJ found that Sheets' claims relating to the impairments in question were not credible. (R. at 15.) Sheets "testified that *after 1 1/2 hours* of exertion he must rest and that he can't do *what he used to do*. Finally, [Sheets] testified that his doctor told him *not to push himself*." (R. at 15.) In signed statements, Sheets reported regular participation in activities that would not be possible for someone with the impairments he claims, including taking care of his dogs, mowing the lawn, doing the weekly grocery shopping, and using a computer. The ALJ summarized, "Mr. Sheets'

testimony leaves you with the impression that there is still much that the claimant can do and the record bears that out." (*Id.*)

In reaching this decision, the ALJ rejected Dr. Shamiyeh's opinion that Sheets "is not able to be productive," "can[not] work at this point," and is "disabled" on a "chronic" basis. (R. at 98.) Dr. Shamiyeh's own notes and course of treatment do not support his conclusory statements. The doctor's April 9, 2003 notes show "only *occasional* wheezing and occasional chest pain." (R. at 15 (citing R. at 95-120).) Two months later, Dr. Shamiyeh found that Sheets was "*doing well* with *no complaints*, no chest pain . . . and no back or joint pain." (*Id.* (citing R. at 224-29).) Nor does Dr. Shamiyeh's course of treatment support his opinion that Sheets is unable to work as a result of exertional impairments. For example, while Dr. Shamiyeh prescribed numerous medications for Sheets' breathing problems, he prescribed only two medications for any other exertional impairments—one Cartia a day for blood pressure, one Zocor a day for cholesterol, one Clarinex a day for allergies, and one Prevacid, an acid reflux and heartburn drug, each day for "stomach." (R. at 221-23.) Dr. Shamiyeh treated the remainder of Sheets' exertional complaints with over the counter drugs like Aspirin, Tums, and Tylenol. (R. at 221.)

In addition, Dr. Shamiyeh's opinions were inconsistent with the other evidence in the record. Dr. Smiddy, a pulmonary specialist, confirmed Sheets' pneumoconiosis diagnosis, but found no other exertional impairments upon physical examination. He reported, "HEAD AND NECK: Negative," "CARDIOVASCULAR: Negative," "MUSCULOSKELETAL: Negative." (R. at 121.) Dr. Smiddy concluded,

> I explained to [Sheets] that he should be labeled as disabled for exposure to dust as he should not work at any job in which he breathes any dust whatsoever based on having complicated pneumoconiosis. However, the patient may not be totally disabled for any job whatsoever based on having a normal P[ulmonary] F[unction] T[est].

(R. at 122.)

Finally, the ALJ noted that Dr. Shamiyeh's opinion was inconsistent with the findings of the medical expert, Theron Blickenstaff, M.D., and the state agency physician, Donald R. Williams, M.D. (R. at 16.) At the hearing, Dr. Blickenstaff testified that Sheets' only exertional impairment was pneumoconiosis.[1] (R. at 264.) Upon review of the evidence, Dr. Williams reached similar conclusions, opining that

---

[1] Sheets argues that Dr. Blickenstaff's testimony is not supported by the evidence because it is inconsistent with the opinions of Drs. Shamiyeh and Williams. The ALJ resolved the conflict between the opinions of Drs. Shamiyeh and Blickenstaff in Dr. Blickenstaff's favor for the reasons described in this opinion. The conflict between the opinions of Drs. Blickenstaff and Williams is limited to the question whether Sheets could lift 35 pounds occasionally and 15 pounds frequently, or 20 pounds occasionally and 10 pounds frequently. (Pl.'s Br. at 5.) The ALJ appropriately considered this difference, but ultimately concluded that "[t]he State Agency physical residual functional capacity assessment . . . is widely consistent with the medical expert's RFC assessment." (R. at 16.)

Sheets' only exertional impairment is pneumoconiosis and recommending work limitations which take that impairment into account. (R. at 167-74.)

The ALJ's decision to give less weight to the opinion of Dr. Shamiyeh in the face of persuasive contrary evidence was an appropriate exercise of his discretion. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). The ALJ thoroughly reviewed the evidence, and appropriately explained the reasons for his decision. The ALJ's determination is also supported by the additional evidence presented to the Appeals Council. Accordingly, I find the ALJ's determination that pneumoconiosis is Sheets' only severe exertional impairment to be supported by substantial evidence.

*B.*

Next, Sheets argues that the ALJ should have found his nonexertional impairments to be more limiting and contends that he meets or equals the mental retardation listing found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C). (Pl.'s Br. at 7.) To meet this listing, a claimant must have both: (1) a valid IQ score between 60 and 70, and (2) a physical or mental impairment imposing additional and significant work-related limitations on functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (2005).

Sheets' nonexertional impairments do appear to meet the second prong of § 12.05(C). Giving Sheets "every benefit of the doubt," the ALJ adopted the most

limiting assessment of Sheets' mental ability and found that he suffers from severe mental impairments. (R. at 16-17.) The ALJ determined that Sheets' residual functional capacity is reduced by his "seriously limited ability to deal with the public and seriously limited ability to understand, remember and carry out detailed, but not complex, job instructions." (R. at 16-17, 267.)

The evidence as to whether Sheets meets the first prong of § 12.05(C) is less clear. Prior to Sheets' hearing before the ALJ, psychologist Robert Spangler administered a series of psychological tests and estimated that Sheets has a full scale IQ of 80, a verbal IQ of 82, and a performance IQ of 83. (R. at 193.) These scores do not meet the first prong of § 12.05(C). However, in an evaluation conducted one week after the ALJ issued his opinion, B. Wayne Lanthorn, Ph.D., administered the same psychological tests and estimated that Sheets has a full scale IQ of 70, a verbal IQ of 71, and a performance IQ of 74. (R. at 234.) This full scale IQ score does meet the first prong of § 12.05(C). Finally, Sheets' school records from childhood report that he had full scale IQ scores of 70 and 67. (R. at 219.)

Dr. Lanthorn commented on the conflicting IQ scores, explaining,

> [a] comparison of Mr. Sheets['] scores on the administration of this WAIS-III and the one previously done by Dr. Spangler in July 2003 suggests somewheat of a drop, overall, in his scores. This is difficult to explain other than to indicate that Mr. Sheets was well motivated when

> working on the WAIS-III and it is felt that this is an accurate reading of his current functioning. . . .

(R. at 238.) This conflict in the evidence must be resolved, especially considering that IQ is assumed to remain relatively constant over one's lifetime, absent any evidence of change in intellectual functioning. *See Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985)). In light of the evidence from Dr. Lanthorn, I find that the ALJ's determination as to Sheets' nonexertional impairments is not supported by substantial evidence.

It is not the role of this court to now determine which of Sheets' IQ scores is valid. It is the duty of the ALJ reviewing a case to resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). Because this evidence of mental retardation was not before the ALJ, he did not have a chance to develop the record as to Sheets' valid IQ. Accordingly, this case must be remanded pursuant to sentence four[2] of 42 U.S.C.A.

---

[2] Sheets requested a "sentence six" remand for the consideration of new, material evidence. *See* 42 U.S.C.A. § 405(g) (2003 & West Supp. 2005). Although this case does involve the presence of new and additional evidence, that evidence has already been incorporated into the record by the Appeals Council. Accordingly, I will remand so that the Commissioner can attribute weight to the new and additional evidence and provide an explanation as to why it does or does not provide a basis for changing the ALJ's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (distinguishing sentence four and sentence six remands).

§ 405(g) (2003 & West Supp. 2005) for further administrative proceedings. The Commissioner is not obliged to accept the results of Sheets' most recent IQ test if there is a substantial basis for believing that the scores were not valid. If the Commissioner does reject the test results, however, the reasons for doing so must be stated.

## IV. Conclusion.

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied.

An appropriate final judgment will be entered.

DATED: August 3, 2005

/s/ JAMES P. JONES
Chief United States District Judge

-11-